# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION

### CASE NO. 9:17-CV-80495 and CASE NO. 9:17-CV-80496
### MARRA-MATTHEWMAN

---

CONSUMER FINANCIAL PROTECTION BUREAU,

                Plaintiff,

    v.

OCWEN FINANCIAL CORPORATION; OCWEN MORTGAGE SERVICING, INC.; and OCWEN LOAN SERVICING, LLC

                Defendants.

---

OFFICE OF THE ATTORNEY GENERAL,
THE STATE OF FLORIDA,
Department of Legal Affairs,
and

OFFICE OF FINANCIAL REGULATION,
THE STATE OF FLORIDA,
Division of Consumer Finance,

    v.

OCWEN FINANCIAL CORPORATION; OCWEN MORTGAGE SERVICING, INC.; and OCWEN LOAN SERVICING, LLC

                Defendants.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A. Common questions of law and fact dominate these actions. ....................................... 2

        1. The actions involve the same or similar statutes and challenge the same conduct ................................................................................................ 2

        2. Differences in the underlying facts and law are relatively small and do not militate against consolidation ........................................................ 4

    B. Consolidation is efficient and in the interest of judicial economy ............................... 5

        1. Consolidation is most efficient and reduces the burden on the Court and all parties ....................................................................................... 6

            a. Consolidation reduces the burden on witnesses ......................................... 6

            b. Consolidation reduces the burden on the Court ......................................... 7

            c. Consolidation reduces the burden on Defendants ..................................... 7

        2. Consolidating trials avoids divergent verdicts and issue confusion ............... 7

    C. The Court should issue the proposed order to facilitate consolidation ........................ 8

        1. Proposed number of depositions and interrogatories ..................................... 8

        2. Proposed expert discovery schedule ............................................................... 9

        3. Proposed dispositive motion deadline and trial date .................................... 12

III. CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*DOJ v. Quicken,*
  2:16-cv-14050-MAG-RSW (E.D. Mich. Feb. 6, 2017) .............................................................. 9

*DOJ v. Quicken*,
  2:16-cv-14050-MAG-RSW (E.D. Mich. May 26, 2017) ..................................................... 10, 11

*Freund v. Medical & Financial Management, Inc.*,
  2017 WL 7726714 (S.D. F.L. 2017) ..................................................................................... 2, 5

*Hendrix v. Raybestos-Manhattan, Inc.*,
  776 F.2d 1492 (11th Cir. 1985) ..................................................................................... 2, 5, 7, 8

*Instituto De Prevision Militar v. Lehman Brothers, Inc*.,
  2006 WL 8433248 (S.D. F.L. Jan. 19 2006) ............................................................................ 5

*Young v. City of Augusta, GA*,
  59 F.3d 1160 (11th Cir. 1995) .................................................................................................. 5

**STATUTES**

12 U.S.C. § 2605 ............................................................................................................................ 2

12 U.S.C. § 4902(b) ....................................................................................................................... 2

12 U.S.C. § 5564 ............................................................................................................................ 2

**RULES**

Fed. R. Civ. P. 26(f) ................................................................................................................. 9, 11

Fed. R. Civ. P. 42(a) ................................................................................................................. 1, 7

**OTHER AUTHORITIES**

Wright & A. Miller, Federal Practice and Procedure, § 2381 (1971) ............................................ 1

**PLAINTIFFS' MOTION FOR CONSOLIDATION PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 42(a)**

## I.     INTRODUCTION

Plaintiffs, the Bureau of Consumer Financial Protection (the "Bureau"), and the Office of the Attorney General and Office of Financial Regulation for the State of Florida ("Florida") (collectively "Plaintiffs"), respectfully move the Court to consolidate their respective actions, Case Nos. 9:17-CV-80495 and 9:17-CV-80496, against Ocwen Financial Corporation, Ocwen Mortgage Servicing Inc. and Ocwen Loan Servicing, LLC (collectively "Defendants"), for purposes of discovery, pre-trial (including, but not limited to mediation), and trial.[1]

Federal Rules of Civil Procedure 42(a) provides that, for actions involving "a common question of law or fact," a court may consolidate the actions or issue any other orders to avoid unnecessary cost or delay.[2] The purpose of this Rule is to give a "district court broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties."[3]

The Court should grant the Plaintiffs' motions because these related actions involve common questions of law and fact, and consolidation would avoid unnecessary costs and delays to the Court and all the parties. If the cases are consolidated, the Plaintiffs also request that Court amend the scheduling order as proposed in this motion and in the proposed order ("Proposed Order") to conform the two actions.[4]

## II.    ARGUMENT

Federal Rule of Civil Procedure 42(a) permits a district court to consolidate separate actions when they involve "a common question of law or fact." In assessing whether to consolidate actions, courts consider "the risk of prejudice in allowing the matters to proceed separately; the

---

[1] Plaintiff Florida is also filing a motion to consolidate these two cases in its action. The Plaintiffs do not seek consolidation for purposes of appeal and judgment.
[2] Fed. R. Civ. P. 42(a).
[3] Wright & A. Miller, Federal Practice and Procedure, § 2381 (1971).
[4] The Court has already scheduled a hearing for March 6, 2019. *See* DE 256 in Bureau action. Plaintiffs are prepared to argue their position at the March 6 hearing if the Court so directs. Plaintiffs note that a March 6 hearing date would permit one day less than the time allotted under the Court's rules for Defendants to file an opposition before the hearing.

potential for confusion of facts or legal issues; the risk of inconsistent verdicts; the burden on parties, witnesses, and the court; and the length of time and relative expense involved in conducting a single or multiple trials."[5] Because numerous common issues of fact and law dominate in these related actions, consolidation will promote judicial economy and efficiency.

      **A.**      **Common questions of law and fact dominate these actions.**

            **1.**   **The actions involve the same or similar statutes and challenge the same conduct.**

Consolidation is appropriate because of the substantial overlap in both questions of law and fact between the Bureau's and Florida's actions. Plaintiffs allege many of the same violations of law, including the same violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 and the Homeowner's Protection Act, 12 U.S.C. § 4902(b) ("HPA"), which as violations of federal consumer financial law also violate the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5564. Furthermore, for other claims, such as the CFPA and Fair Debt Collection Practices Act ("FDPCA") claims in the Bureau action and Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claims in the Florida action, many of the elements of federal law and state law claims overlap.[6] The Bureau and Florida also bring their respective cases against the same three Defendants and each alleges all three Defendants are liable and operate as a common enterprise.[7]

Even where there may be differences in the specific statutes pled by the Plaintiffs, both actions involve the same conduct relating to Defendants' handling of borrowers' payments, insurance policies, escrow accounts, loss mitigation applications, foreclosure proceedings, and communications with borrowers. For instance, the Bureau and Florida brought claims under federal and state law, respectively, relating to Defendants' use of inaccurate records in servicing loans, sending deceptive letters to borrowers, and failures in processing borrowers' payments. The claims are brought under different laws, but the underlying conduct alleged in each action is

---

[5] *Freund v. Medical & Financial Management, Inc.*, 2017 WL 7726714, at *1 (S.D. F.L. 2017) citing *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985).

[6] For example, claims of unfairness under the CFPA and FDUTPA both have elements related to whether the borrower could reasonably have avoided the conduct or substantial injury, and whether there was a countervailing benefit from the conduct to competition or borrowers.

[7] DE 88 of the Florida action at ¶ 25; DE 1 of the Bureau action at ¶ 22.

substantially similar, if not the same. The common questions of law and fact (organized by the claims in the Bureau's complaint) are depicted in the chart below:

| CLAIM | COMMON QUESTIONS OF FACT | COMMON QUESTIONS OF LAW |
|---|---|---|
| Count I–CFPA: Inaccurate Records | Yes | Partial Overlap |
| Count II–CFPA: Deception Regarding Loan Terms and Status | Yes | Partial Overlap |
| Count III–CFPA: Unfair Foreclosure Practices | Yes | Partial Overlap |
| Count IV–CFPA: Deceptive Foreclosure Communications | Yes | Partial Overlap |
| Count V–CFPA: Unfair Add-Ons | No | No |
| Count VI–CFPA: Deceptive Add-Ons | No | No |
| Count VII–TILA: Periodic Statements, Payment Dating, and Suspense Balances | Yes | No |
| Count VIII–FDCPA: Inaccurate Records | Yes | Partial Overlap |
| Count IX–FDCPA: Deception Regarding Loan Terms and Status | Yes | Partial Overlap |
| Count X–RESPA: Escrow Analyses, Shortages, Statements, and Insurance Cancellations | Yes | Yes |
| Count XI–RESPA: Notice of Error Violations | Yes | No |
| Count XII–RESPA: Policies and Procedures | Yes | Yes |
| Count XIII–RESPA: Foreclosure Violations | Yes | Yes |
| Count XIV–HPA: PMI Charges | Yes | Yes |

Florida has brought distinct causes of action, including Florida's Counts V and VI brought under the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes, and Counts VII and VIII brought under Chapter 494, Florida Statutes. These causes of action in Florida's action involve common questions of fact except for Count VIII regarding Ocwen Loan Servicing's failure to submit an audited financial report timely, which is discrete and distinct.

Defendants do not substantively disagree with Plaintiffs' assertions herein that the actions include common questions of law and fact. They have repeatedly taken the position that the Bureau's and Florida's actions have largely identical claims and factual allegations. In their Motion to Dismiss Florida's Second Amended Complaint ("SAC"), for example, Defendants assert that: (1) the Florida complaint "remains identical in concept—and actually identical in many places" to the Bureau's complaint; (2) Florida's SAC has three counts that "essentially duplicate" the Bureau's complaint; (3) "Four of the Counts in the [Florida] SAC are under the same federal law as the [Bureau's] complaint;" and (4) Florida's SAC has "other counts that seek relief for Florida residents for many of the same practices for which the [Bureau] already seeks relief for residents of all states (including Florida)."[8]

In sum, the parties appear to agree: the Bureau's and Florida's actions share substantial common questions of law and fact. These commonalities merit consolidation.

### 2. Differences in the underlying facts and law are relatively small and do not militate against consolidation.

To the extent that differences exist between the Bureau and Florida actions, these differences are small relative to the common questions of law and fact between them, and do not preclude consolidation of the actions. Specifically, Florida brings certain claims in its SAC that are in addition to and different than the Bureau's claims.[9] Likewise, the Bureau brings certain claims

---

[8] DE 96 at 2 in the Florida action.

[9] *See*, *e.g*., DE 88 in the Florida action (RESPA violations relating to Defendants' failures to timely refund escrow surpluses and loss mitigation process, *see* ¶¶ 99, and 181-183; state law violations relating to Defendant's disbursements, or lack thereof, from escrow accounts and failure to file required annual audits, *see* ¶¶ 223-235).

that are different than those alleged by Florida.[10] But, as discussed above, the underlying conduct and facts are largely similar. Further, courts in this district have found that even where plaintiffs have different allegations, consolidation is still appropriate if the facts that underlie the allegations are similar and "consolidation would streamline discovery by eliminating duplication of time and effort by all parties, avoid unnecessary inconvenience to the parties and witnesses as well as contain litigation costs."[11] Indeed, even in matters involving different facts and circumstances, the Eleventh Circuit overturned a denial of a motion to consolidate because the "core issue of liability" in both cases was the same.[12]

Here, the Bureau and Florida actions involve an overwhelming amount of common questions of law and facts and core issues of liability. Consolidation of the two actions is thus appropriate and necessary to streamline these actions to the benefit of the Court and all parties.

      **B.     Consolidation is efficient and in the interest of judicial economy.**

In assessing whether to consolidate cases, courts also weigh the time, effort, and money saved by consolidation, such as the burden on the parties, witnesses, and the court, and the length of time and relative expense in conducting a single or multiple trials.[13] Courts also consider the risk of prejudice in allowing the matters to proceed separately, such as the potential for confusion of facts or legal issues and the risk of inconsistent verdicts.[14] All of these considerations weigh in favor of consolidation here.

At this point in the two litigations, the discovery, pre-trial, and trial timelines have nearly converged. The Florida action has an expert discovery deadline of July 26, 2019, a dispositive motion deadline of October 1, 2019 and trial set for July 2020.[15] The Bureau action has a fact discovery deadline of July 1, 2019, expert discovery deadline of August 1, 2019, dispositive motion deadline of September 20, 2019, and trial is set for April 2020.[16]

---

[10] *See*, *e.g*., DE 1 in the Bureau action (CFPA violations relating to Defendants' unfair billing and deceptive marking of add-on products, see ¶¶ 244-251).
[11] *Instituto De Prevision Militar v. Lehman Brothers, Inc*., 2006 WL 8433248, at *2 (S.D. F.L. Jan. 19 2006).
[12] *Young v. City of Augusta, GA*, 59 F.3d 1160, 1168-1169 (11th Cir. 1995).
[13] *Freund*, 2017 WL 7726714, at *1 citing *Hendrix*, 776 F.2d at 1495.
[14] *Id*.
[15] DE 108 in the Florida action.
[16] DE 166 and DE 242 in the Bureau action.

5

As both actions have progressed, the Plaintiffs' discovery efforts have also converged. For example, the Plaintiffs expect that the majority of deponents will be the same. The topics to be covered in depositions are also nearly identical. Likewise, as Defendants' conduct appears to cause similar harm to all borrowers and requires similar discovery,[17] Plaintiffs believe that almost all of their expert discovery will be the same as well.

As Plaintiffs' scheduling orders and discovery efforts have begun to converge, it is clear there are significant efficiencies in consolidating remaining discovery, dispositive motions, and trial, which would otherwise be significantly—and unnecessarily—duplicative. Consolidation will reduce the burden on witnesses, the Court, and the parties, and avoid the risk of inconsistent verdicts.

### 1. Consolidation is most efficient and reduces the burden on the Court and all parties.

In light of the convergence of the scheduling orders and substantial duplication of future work, including depositions, expert discovery, dispositive motions, and trial, consolidation is sensible and efficient.

#### a. Consolidation reduces the burden on witnesses.

Most of the witnesses for the Bureau's and Florida's actions will be the same. As a result, when the Bureau and Florida began identifying deponents, Defendants requested that the Bureau and Florida coordinate depositions to avoid unnecessary burden to these witnesses. Plaintiffs agree that there is an unnecessary burden in requiring the same witnesses to be deposed twice and testify at separate trials. Consolidation will reduce the burden on these witnesses, thus supporting Plaintiffs' motion to consolidate for purposes of discovery, pre-trial, and trial.

Defendants informed Plaintiffs that they do not oppose consolidation for purposes of discovery, but do oppose consolidation for purposes of trial. Such partial consolidation does not address the concerns that Defendants themselves have expressed regarding depositions. If Defendants' concern is in fact about burden to witnesses, then such a concern weights in favor of consolidating the cases for both discovery and trial, which would eliminate the need for certain

---

[17] Based on discovery obtained from Defendants, the Bureau notes that it appears that Florida borrowers were disproportionately impacted by Defendants' alleged violations of law, including unlawful foreclosure sales.

witnesses to appear at two separate trials just to testify twice about the same or substantially similar conduct.

### b. Consolidation reduces the burden on the Court.

Without consolidation, the Court will be burdened by managing two large, complex government enforcement actions. This burden is unnecessary given the common questions of law and fact in these actions, and where discovery, pretrial, and trial schedules between the two actions are already converging. The Eleventh Circuit has "encouraged trial judges to make good use of Rule 42(a) . . . in order to expedite the trial and eliminate unnecessary repetition and confusion."[18] This motion enables the Court to do so, and reduce the volume of work associated with these complex government actions into one single consolidated action.

### c. Consolidation reduces the burden on Defendants.

Consolidation would also reduce the work that Defendants would face in defending against two cases that they themselves have described as "identical." As noted above, when Plaintiffs began identifying and noticing depositions for some of the same witnesses, Defendants asked Plaintiffs to coordinate on depositions, prompting this Motion. Based on the parties' conferral, Defendants appear to support consolidating for purposes of discovery but not for trial. When asked about their reason for opposing consolidation for purposes of trial, Defendants' counsel stated only that their client was reluctant to consolidate for trial and that the Florida case was smaller. To date, Defendants have not asserted that having two separate trials would be less burdensome for Defendants or would otherwise promote judicial efficiency.

### 2. Consolidating trials avoids divergent verdicts and issue confusion.

Consolidation of the Bureau's and Florida's actions avoids the risk of potential prejudice from inconsistent verdicts or the potential for confusion of facts or legal issues. This risk is particularly high in these two very complex cases involving a large scope of alleged misconduct across many mortgage servicing functions. Currently, there are two separate trials scheduled for April 2020 and July 2020. At these trials, Plaintiffs expect to focus upon many of the same witnesses, experts, facts, and laws. Defendants have represented to the Court that they do not have affirmative defenses beyond those in their Motions to Dismiss and that most of their

---

[18] *Hendrix*, 776 F.2d at 1495.

7

defenses are factual. Thus, presumably, Defendants will also focus on similar facts, witnesses, and experts. Given the complexity and similarity of these cases, two separate trials would create a substantial risk of confusion or inconsistent verdicts as to the same facts and laws.

To the extent there is any potential for jury confusion or prejudice during a consolidated trial, including where facts and the law are not the same, the Eleventh Circuit noted that this may be "alleviated by utilizing cautionary instructions to the jury during the trial and controlling the manner in which the plaintiffs' claims (including the defenses thereto) are submitted to the jury for deliberation."[19] Plaintiffs believe that there is sufficient commonality among the law, facts, and witnesses such that any dissimilarities can be effectively managed by the Court through these mechanisms. The benefits of consolidation, including the reduction of the risk of confusion and divergent verdicts, therefore far outweigh any potential downside risks.

### C. The Court should issue the proposed order to facilitate consolidation.

The Court should issue an order to address the number of depositions and interrogatories in this case, expert discovery timelines, and the parties' scheduling orders. Plaintiffs propose the following:

### 1. Proposed number of depositions and interrogatories.

Plaintiffs propose that they be allowed to take 28 fact depositions and six days of 30(b)(6) testimony in the consolidated action. Currently, the Court has authorized the Bureau to take four days of 30(b)(6) testimony and twenty fact depositions. Florida has ten fact depositions allowed under the Rules, and would likely seek leave for more depositions and potentially additional time for 30(b)(6) testimony, if it is to proceed with a separate case. Currently, if the Plaintiffs proceeded with their separate cases, they would be entitled to a total of 30 full days of deposition, including five days of 30(b)(6) testimony.[20]

---

[19] *Hendrix*, 776 F.2d at 1495.

[20] Defendants have requested that Plaintiffs coordinate depositions but also previously objected to discovery in Florida's action to the extent it seeks information and documents that are national in scope but otherwise affect Florida borrowers. Florida maintains that it is entitled to seek recoveries on behalf of borrowers nationally because the Defendants are located in Florida. If, however, the Bureau and Florida actions are consolidated and sharing in deposing witnesses, the Plaintiffs seek an order confirming that Florida is entitled to seek testimony about conduct or issues that are national in scope. Each Plaintiff would use such testimony.

8

Plaintiffs' request for 28 fact depositions and six days of 30(b)(6) testimony in a consolidated case is both proportionate and reasonable, in light of the size, complexity and scope of such a case. In support of their request, the Plaintiffs rely upon and refer the Court to the Bureau's Motion for Leave to Take Additional Depositions (DE 223) and its Reply (DE 233). And as noted above, while the Plaintiffs share the majority of deposition topics, Florida also requires additional testimony in light of the claims and underlying facts that are dissimilar from the Bureau's action.[21] Accordingly, the Plaintiffs' request for 28 fact depositions and six days of 30(b)(6) testimony is entirely proportionate in light of the size, complexity, and scope of the consolidated case.[22]

The Plaintiffs also propose that they be allowed to propound a total 45 interrogatories. By agreement with Defendants, the Bureau may propound a total of 28 interrogatories,[23] and therefore a total of 45 Plaintiffs' interrogatories represent a reduction in Florida's interrogatories from 25 to 17.  Plaintiffs believe 45 interrogatories is reasonable and proportionate in light of the size, complexity, and scope of the consolidated case.

### 2. Proposed expert discovery schedule.

Plaintiffs are proposing an expert discovery schedule that is consistent with standard practice. Plaintiffs seek an extra 30 days to allow the parties to depose expert witnesses, but do not propose changing the dispositive motion or trial deadlines. Currently, expert discovery is due by August 1, 2019 and July 26, 2019 in the respective Bureau and Florida actions. <u>All parties</u> propose that fact discovery should be completed by July 1, 2019 in both actions. Following the January 24, 2019 hearing in the Bureau action, the Court ordered the Bureau and Defendants to

---

[21] *See* February 18, 2019 letter from Jennifer Pinder to Laura Stoll at 2–3 ("Florida provides the following list of topic areas for which it needs additional discovery [unique to the Florida matter]," attached as Exhibit A. For common witnesses that Plaintiffs seek to depose, Florida may need additional time to address Florida specific topics.

[22] In *DOJ v. Quicken*, a similar civil enforcement action brought by the Department of Justice against one of the nation's largest mortgage companies, the parties agreed to 25 days of depositions and 20 half or 4-hour days of depositions. Joint Civil Rule 26(f) Report (DE 23) at 16, *DOJ v. Quicken*, 2:16-cv-14050-MAG-RSW (E.D. Mich. Feb. 6, 2017), attached at Exhibit B.

[23] To resolve a discovery dispute, Defendants agreed to allow the Bureau to propound three interrogatories in addition to the 25 interrogatories permitted under the Federal Rules. *See* DE 76 in the Bureau action.

propose deadlines for the exchange of expert reports and rebuttal reports. Defendants informed the Court that they did not intend to introduce any affirmative expert reports.

Following that hearing, Defendants proposed to the Bureau the following deadlines:

- The Bureau provide its expert report by May 1;
- Defendants provide a rebuttal report by June 1;
- Bureau provides a sur-rebuttal report by June 16; and
- Parties complete discovery by August 1.

The Bureau rejected Defendants' proposal because it required the Bureau to provide its expert report two months *before* the expiration of fact discovery and approximately one month after the Bureau will receive the long-outstanding data for 1.58 million loans that it requested over eight months ago. As Defendants should be aware, this leaves the Bureau with virtually no time to review, follow-up on, and analyze the long-outstanding data that its expert intends to review and report upon. Instead, the Bureau proposed, and Florida has since adopted the proposal, that the parties present to the Court a still abbreviated schedule, but one that better affords the parties and their experts the time necessary to engage in reasonable expert discovery:

- Plaintiffs provide their expert report(s) by July 9;
- Defendants provide a rebuttal report by August 9;
- Plaintiffs provides a sur-rebuttal report by August 16; and
- Parties complete expert discovery by August 31.

The proposed expert discovery schedule provides the Plaintiffs with the time they need to complete fact discovery, including as to the data which will need significant testing through both analysis and explanatory depositions, and then analysis for purposes of actually calculating damages. It also provides Defendants with the 30 days they originally requested for a rebuttal report. Plaintiffs believe the proposed schedule is both prudent and reasonable, particularly if the cases are consolidated. As is typical when presenting expert testimony, particularly in a complex, data-heavy case, Plaintiffs will need to complete fact discovery prior to submitting its expert disclosures.[24] For example, in the *Department of Justice v. Quicken*, which is another similarly

---

[24] When Defendants initially intended to present affirmative expert reports, they requested that reports be due after fact discovery.

complex national government enforcement action involving the analysis of loan-level mortgage data, the Court ordered the government's expert disclosures due on July 2, 2018 (a month after fact discovery was due), Quicken's expert disclosures due on August 2, 2018, and expert discovery completed by September 4, 2018.[25] These dates are consistent with the expert discovery schedule the Bureau has proposed.

Defendants have opposed the Bureau's proposed schedule for expert discovery for three reasons, none of which have any merit. First, Defendants claim their experts have limited availability during the summer months, particularly August. This objection is unsupported by either law or fact as being a legitimate concern warranting any consideration.

Second, Defendants claim the Bureau's proposed schedule would not leave enough time for "written expert discovery." When pressed on what this meant, Defendants claimed they would need to seek materials considered by the expert. But as Defendants should be aware, the Federal Rules already require a party to produce all such discoverable materials at the time of providing the expert report.[26] Thus, Defendants will have all such information by July 9, 2019, which gives them nearly two months to review and prepare for depositions of the Plaintiffs' expert(s). Defendants also have the bulk of the materials already–namely, the data for the 1.58 million loans–and have had such data for years.

Finally, Defendants claim that the Bureau's proposed schedule would not allow them sufficient time to prepare dispositive motions by September 20, 2019. But any such time constraint created by this schedule is equally felt by the Plaintiffs and Defendants. Moreover, given this concern, the Bureau reasonably proposed that the parties request that the Court adopt Florida's dispositive motion deadline of October 1, 2019, which would give all parties the extra time they likely want. Defendants rejected this proposal, claiming the Bureau was seeking extra time for itself, although Defendants would also benefit from this brief extension.

In sum, Defendants seek to deprive Plaintiffs of the time they need to prepare complex affirmative expert reports—likely because Defendants are not going to submit any such reports. Yet, Defendants seek to keep their own rebuttal period at a reasonable length to rebut and

---

[25] Order Regarding Scheduling Matters (DE 44), *DOJ v. Quicken*, 2:16-cv-14050-MAG-RSW (E.D. Mich. May 26, 2017), attached at Exhibit C.
[26] *See* Fed. R. Civ. P. 26(f).

11

analyze the expert discovery (*e.g.*, the data they currently have and Plaintiffs do not). Defendants' proposal is also particularly unreasonable given their rejection of Florida's dispositive motion deadline, which would alleviate their concern about needing more time. The Court should reject Defendants' one-sided proposal and issue the expert schedule proposed by the Plaintiffs.

### 3. Proposed dispositive motion deadline and trial date.

The Plaintiffs propose to align their respective scheduling orders as to dispositive motions and trial in a consolidated case. The Plaintiffs suggest that extra time afforded by Florida's dispositive motion deadline (October 1, 2019) and the Florida's trial docket (beginning July 2020) would benefit all parties. Defendants have suggested adopting the Bureau's deadlines, but without explanation other than claiming that the Bureau and Florida are attempting to cherry pick the most advantageous deadlines. Defendants are partially correct–Plaintiffs are proposing these deadlines to afford *all* parties and the Court sufficient time to address dispositive motions and prepare to try a large, complex consolidated case. Plaintiffs also request that the trial be set for three weeks (rather than two separate two-week trials).

The current status, Plaintiffs' proposals, and Defendants' proposals are set forth in the chart below:

| TOPIC | CURRENT STATUS | PLAINTIFFS' PROPOSAL | DEFENDANTS' PROPOSAL |
|---|---|---|---|
| **Depositions** | 30(b)(6): total of five days by Plaintiffs<br><br>Fact depositions: total of 30 (Bureau 20 depositions; Florida 10 depositions) | 30(b)(6): total of six days by Plaintiffs<br><br>Fact depositions: total of 28 fact depositions by Plaintiffs | 30(b)(6): total of four days by Plaintiffs<br><br>Fact depositions: total of 20 fact depositions by Plaintiffs |
| **Interrogatories** | 53 total interrogatories (Bureau had 28 interrogatories; Florida 25 interrogatories) | 45 total interrogatories | |
| **Fact Discovery Deadline** | Bureau deadline: July 1, 2019<br><br>Florida and Defendants are negotiating a new deadline | July 1, 2019 | July 1, 2019 |

12

| | | | |
|---|---|---|---|
| **Expert Discovery Deadline** | Bureau expert discovery deadline: August 1, 2019<br><br>Florida expert discovery deadline: July 26, 2019 | Exchange affirmative reports: July 9, 2019<br><br>Exchange all rebuttal reports: August 9, 2019<br><br>Exchange sur-rebuttal reports: August 16, 2019<br><br>Complete expert discovery: August 31, 2019 | Exchange affirmative reports: May 1, 2019<br><br>Exchange all rebuttal reports: June 1, 2019<br><br>Exchange sur-rebuttal reports: June 16, 2019<br><br>Complete expert discovery: August 1, 2019 |
| **Dispositive Motions** | Bureau deadline: September 20, 2019<br><br>Florida deadline: October 1, 2019 | October 1, 2019 | September 20, 2019 |
| **Trial** | Bureau trial: set for April 2020<br><br>Florida trial: set for July 2020 | July 2020 | April 2020 |

### III.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully move the Court to consolidate the Bureau's and Florida's actions for the purpose of discovery, dispositive motions, pre-trial matters (including, but not limited to, mediation), and trial, but for not judgment and appeals for the reasons described in this motion. Plaintiffs also respectfully move for the Court to issue an order consistent with their above proposals.

Dated: February 20, 2019

Respectfully submitted,

Attorneys for Plaintiff,
BUREAU OF CONSUMER FINANCIAL PROTECTION

JOHN C. WELLS
Deputy Enforcement Director

JAMES T. SUGARMAN
Assistant Litigation Deputy

/s/ *Jean M. Healey*
Jean M. Healey
Phone: 202-437-7514
E-mail: Jean.healeydippold@cfpb.gov

| | |
|---|---|
| Jan Singelmann | jan.singelmann@cfpb.gov |
| Atur Desai | atur.desai@cfpb.gov |
| Tianna Baez | tianna.baez@cfpb.gov |
| Amanda Roberson | amanda.roberson@cfpb.gov |
| Stephanie Brenowitz | stephanie.brenowitz@cfpb.gov |
| Erin Mary Kelly | erin.kelly@cfpb.gov |
| James Savage | james.savage@cfpb.gov |
| Greg Nodler | greg.nodler@cfpb.gov |
| Michael Posner | michael.posner@cfpb.gov |
| Jack Douglas Wilson | doug.wilson@cfpb.gov |

1700 G Street NW
Washington, DC 20552
Facsimile: (202) 435-7722

Counsel for Plaintiffs in the Florida Action:

Office of the Attorney General
The State of Florida
Department of Legal Affairs

Ashley Moody
Attorney General

/s/ *Jennifer Hayes Pinder*

Jennifer Hayes Pinder
Senior Assistant Attorney General
Fla. Bar No.: 17325
Email: *Jennifer.Pinder@myfloridalegal.co*m

Sasha Funk Granai
Assistant Bureau Chief, Tampa
Fla. Bar No.: 96648
Email: *Sasha.Granai@myfloridalegal.com*

Victoria Butler
Director, Consumer Protection Division
Fla. Bar No.: 861250
Email: *Victoria.Butler@myfloridalegal.com*

3507 East Frontage Road, Suite 325
Tampa, FL 33607
Phone: 813-287-7950
Fax: 813-281-5515

Office of Financial Regulations
The State of Florida
Division of Consumer Finance

/s/ *Scott Fransen*

Scott R. Fransen
Assistant General Counsel
Fla. Bar No.: 0994571
Email: *Scott.Fransen@flofr.com*
1313 N. Tampa St., Suite 615
Tampa, FL 33602
Telephone: 813-218-5364
Facsimile: 813-272-3752

Miriam S. Wilkinson
Chief Counsel
Fla. Bar No.: 972101
Email: *Miriam.Wilkinson@flofr.com*

Anthony Cammarata
General Counsel
Fla. Bar No.: 767492
Email: *Anthony.Cammarata@flofr.com*
The Fletcher Building
200 E. Gaines Street
Tallahassee, FL 32399-0370
Telephone: 850-410-9601

## **CERTIFICATE OF GOOD FAITH CONFERENCE; CONFERRED BUT UNABLE TO RESOLVE ISSUES PRESENTED IN THE MOTION**

Pursuant to Local Rule 7.1(a)(3)(A), we hereby certify that counsel for the Plaintiffs have met-and-conferred with Defendants in good faith but have been unable to resolve the issues.

/s/ Jean M. Healey
Jean M. Healey
E-mail: jean.healeydippold@cfpb.gov
Phone: 202-435-7514

1700 G Street NW
Washington, DC 20552

*/s/ Jennifer Hayes Pinder*

Jennifer Hayes Pinder
Senior Assistant Attorney General
Fla. Bar No.: 17325
Email: Jennifer.Pinder@myfloridalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on February 20, 2019 via CM/ECF on all counsel or parties of record.

*/s/ Jennifer Hayes Pinder*
Jennifer Hayes Pinder
Senior Assistant Attorney General
