**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 9:17-CV-80496**
**MARRA-MATTHEWMAN**

OFFICE OF THE ATTORNEY GENERAL,
THE STATE OF FLORIDA, Department of
Legal Affairs,
and
OFFICE OF FINANCIAL REGULATION,
THE STATE OF FLORIDA, Division of
Consumer Finance,

        Plaintiffs,

   v.

OCWEN FINANCIAL CORPORATION,
OCWEN MORTGAGE SERVICING, INC.,
OCWEN LOAN SERVICING, LLC; and
PHH MORTGAGE CORPORATION,

        Defendants.

**FINAL CONSENT JUDGMENT**

Plaintiffs, Office of the Attorney General, State of Florida, Department of Legal Affairs (the "Attorney General") and Office of Financial Regulation, State of Florida, Division of Consumer Finance ("OFR") (collectively, "the Florida Plaintiffs") appearing through the undersigned counsel, and Ocwen Financial Corporation, Ocwen Mortgage Servicing, Inc., Ocwen Loan Servicing, LLC, and PHH Mortgage Corporation (collectively "Ocwen" or "Defendant"), appearing through its attorneys, having stipulated to the entry of this Final Consent Judgment ("Judgment"), and the Court having considered the matter and good cause appearing:

**IT IS HEREBY ORDERED THAT**:

## I.      FINDINGS

1.      The Florida Plaintiffs and Ocwen (each a "Party" and collectively the "Parties") have agreed to resolve the issues resulting from the Covered Conduct by entering into this Judgment.

2.      This Court has jurisdiction over the subject matter of this lawsuit and over the Parties.

3.      The terms of this Judgment shall be governed by the laws of the State of Florida.

4.      Entry of this Judgment is in the public interest and reflects a negotiated Judgment among the Parties.

5.      This Judgment shall not be construed or used as a waiver or limitation of any defense otherwise available to Ocwen in any other action, or of Ocwen's right to defend itself from, or make any arguments in, any private individual, regulatory, governmental, or class claims or suits relating in any way to the subject matter or terms of this Judgment. This Judgment is made without trial or adjudication of any issue of fact or law or finding of liability of any kind, and shall not be considered an admission of liability or a determination of liability as to any allegations made in the Florida Plaintiffs' Complaints and the causes of action therein.  Ocwen enters into this Final Judgment for settlement purposes only and denies allegations of wrongdoing and any liability for the purported claims asserted in the Florida Plaintiffs' Complaints.

6.      Nothing contained herein, nor any negotiations or transactions connected in any way with this Judgment, shall be offered, received or admissible in evidence in any proceeding to prove any liability or wrongdoing, or an admission on the part of Ocwen, by any individual or entity not a party hereto.  Notwithstanding the foregoing, the Attorney General may file an action to enforce the terms of this Judgment.

7.      Nothing herein constitutes approval by the Florida Plaintiffs of Ocwen's past or future practices.  Ocwen shall not make any representation to the contrary regarding this Judgment, or use the name of the Office of the Florida Attorney General, State of Florida, Department of Legal Affairs, or Office of Financial Regulation, State of Florida, Division of Consumer Finance, or any of their current or former employees or representatives, in connection with its business practices relating to servicing of single-family residential mortgages, or as an endorsement or approval of Ocwen's acts, practices or conduct of business.

8.      No part of this Judgment shall create a private cause of action or confer any right to any third party for violation of any federal or state statute.

## II.      DEFINITIONS

9.      As used in this Judgment, the following words or terms shall have the following meanings:

   a.   "Applicable Requirements" shall be defined as (i) applicable federal, state and local laws, rules and regulations, (ii) the terms of the applicable mortgage loan documents, (iii) section 201 of the Helping Families Save Their Homes Act of 2009, and (iv) the terms and provisions of the Servicer Participation Agreement with the Department of the Treasury, any servicing agreement, subservicing agreement under which Ocwen services for others, special servicing agreement, mortgage or bond insurance policy or related agreement or requirements to which Ocwen is a party and by which it or its servicing is bound pertaining to the servicing or ownership of the mortgage loans, including without limitation the requirements, binding directions, or investor guidelines of the applicable investor (such as Fannie Mac or Freddie Mac), mortgage or bond insurer, or credit enhancer.

b. "Covered Conduct" shall mean the practices, acts, or omissions of Ocwen, prior to the Effective Date, set forth in the allegations, subject matter, and claims alleged in the Florida Plaintiffs' Complaints, including any facts related specifically thereto.

c. "Debt Forgiveness" shall be defined and calculated as set forth in Exhibit 1.

d. "Effective Date" shall mean the date this Judgment is entered by the Court.

e. "Florida Borrower" shall mean any borrower with a residential Florida property address whose loan any Defendant services and/or subservices as of the Effective Date.

f. "Florida Plaintiffs' Complaints" shall mean the Complaint of April 20, 2017 (Case No. 9:17-CV-80496, ECF No. 1), the Amended Complaint of June 14, 2017 (Case No. 9:17-CV-80496, ECF No. 20), the Second Amended Complaint of July 11, 2018 (Case No. 9:17-CV-80496, ECF No. 88 and the Third Amended Complaint of November 1, 2019 (Case No. 9:17-CV-80495, ECF No. 506).

### III.    FINANCIAL TERMS

10. <u>Monetary Payment</u>:  Under the terms of this Judgment, Ocwen is obligated to pay the Florida Plaintiffs Five Million One Hundred Sixty Thousand Dollars ($5,160,000), for which let execution issue forthwith, pursuant to the terms of Paragraphs 11 and 12, and will be obligated to pay an additional One Million Dollars ($1,000,000) if it does not satisfy the terms proscribed by Paragraphs 15 and 16.  The Florida Plaintiffs have allocated the Monetary Payment as follows:

a. <u>Relief to Florida Borrowers</u>:  Two Million One Hundred Fifty Thousand Dollars ($2,150,000) in consumer relief to address claims brought by the Florida Plaintiffs regarding Ocwen's alleged failure to timely make insurance payments out of Florida Borrowers' escrow accounts in violation of RESPA (Count I of the Third Amended Complaint); and to address claims brought by the Attorney General pursuant to the Florida Deceptive and Unfair Trade Practices Act, including certain of Ocwen's alleged failures related to Florida Borrowers' escrow accounts and Ocwen's alleged excessive charges related to property preservation inspections (Counts VI and VII of the Third Amended Complaint).  Florida Borrowers' eligibility to receive payments, and determination of the amount of any consumer

4

payment, lies solely within the discretion and judgment of the Attorney General, and such funds may be used for other purposes, or be placed in, or applied to, any consumer protection enforcement or revolving fund, future consumer protection or privacy enforcement or litigation, consumer education, or for others uses permitted by state law, at the sole discretion of the Attorney General;

b.   <u>Civil Penalties</u>:  Two Million Dollars ($2,000,000) in civil penalties to address the Florida Plaintiffs' claims under all surviving counts (Counts I, II, III, IV, VI, VII and VIII of the Third Amended Complaint); except that One Million Dollars ($1,000,000) of the civil penalties award shall be suspended ("Suspended Penalty Amount"). Ocwen will only be obligated to pay the Suspended Penalty Amount pursuant to the terms described in paragraphs 15 and 16 below;

c.   <u>Administrative Fines</u>:  Ten Thousand Dollars ($10,000) to resolve OFR's administrative claims under Chapter 494, Florida Statutes related to Ocwen's (a) alleged failure to timely make payments from escrow accounts, and (b) alleged failure to timely file annual reports in the time period relevant to the Third Amended Complaint; and

d.   <u>Attorneys' Fees and Costs</u>:  Two Million Dollars ($2,000,000) in attorneys' fees and other costs of investigation and litigation.

11.   <u>Payment of Administrative Fine</u>.  No later than thirty (30) days after the Effective Date of this Judgment, Ocwen shall pay to OFR an administrative fine in the amount of Ten Thousand Dollars ($10,000). The fine is payable in one payment and shall be submitted in the form of a wire transfer, money order, or cashier's check made payable to: Department of Financial Services and shall be sent to the attention of Agency Clerk, c/o Joaquin Alvarez, Post Office Box 8050, Tallahassee, Florida 32314-8050.

12.   <u>Payment of Consumer Relief, Attorneys' Fees & Costs, and Civil Penalties.</u>  No later than sixty (60) days after the Effective Date of this Judgment, Ocwen shall pay the sum of Five Million One Hundred Fifty Thousand Dollars ($5,150,000) by check made out to the Legal Affairs Revolving Trust Account or by wire as instructed by the Attorney General.  Time is of the essence in the performance of all terms and conditions of this Judgment, and, in the event Ocwen fails to timely pay as set forth in the paragraph, interest computed in the statutory rate in effect as of sixty-one (61) days after the Effective Date pursuant to Section 55.03, Florida

Statutes, will immediately begin to accrue on any unpaid balance due and owing and will be

rendered immediately due and payable by all Defendants, jointly and severally, upon demand by

the Attorney General.

## IV.    OTHER RELIEF TO FLORIDA BORROWERS

13.    Ocwen shall provide relief to certain borrowers for which Ocwen is presently servicing

residential mortgage loans secured by property in the state of Florida (the "Florida Accounts") as

follows:

14.    <u>Late Fee Waivers</u>:  For those Florida Accounts that Ocwen is presently servicing which

are in Foreclosure or Bankruptcy status, or which are more than 60 days delinquent as of the

Effective Date, Ocwen shall waive late fees previously assessed but not collected as of the

Effective Date.  Ocwen represents that as of September 30, 2020, there are approximately 6,600

accounts subject to this provision, and estimates that the fees waived under this provision shall

amount to approximately Five Million Five Hundred Thousand Dollars ($5,500,000).  Ocwen

will provide the Florida Plaintiffs with a list of the Florida Borrowers receiving relief under this

provision within thirty (30) days of the Effective Date.  Ocwen will provide Florida Plaintiffs

with a notice of compliance with this term within sixty (60) days of Effective Date.

15.    <u>Loan Modification Program Solicited to Florida Accounts (the "Loan Modification</u>

<u>Program")</u>:  Ocwen shall solicit each Florida Account as of the Effective Date, with an offer in

writing to review the account for a loan modification pursuant to this Judgment ("the

Solicitation"), unless the account is otherwise not eligible because the Solicitation or

modification is prohibited by the Applicable Requirements, the loan's investor, program

requirements, customer no-contact directives, or other similar reasons.  Ocwen represents that as

of September 21, 2020, it is currently aware of approximately 3,400 Florida Accounts that may

be eligible to receive a Solicitation to apply for a loan modification.  Ocwen will provide the

Florida Plaintiffs with a preliminary list of the borrowers eligible to receive a Solicitation within

thirty (30) days of the Effective Date.  Nothing herein shall preclude Ocwen, from soliciting

other eligible Florida Borrowers in addition to those identified in the preliminary list.  Every

quarter, commencing the 90th day after Ocwen provides the Florida Plaintiffs with the

preliminary list of eligible borrowers, Ocwen will provide Florida Plaintiffs with a list of the

number of borrowers solicited and an accounting by borrower of the Calculation of Debt

Forgiveness Amount, as that term is described in Exhibit 1.  At the end of the twenty-four (24)

month period commencing on the Effective Date, Ocwen will provide the Florida Plaintiffs with

a final list of borrowers who received a Solicitation pursuant to this paragraph, with an

accounting by borrower of the Calculation of Debt Forgiveness Amount, as that term is

described in Exhibit 1.  The Solicitation to eligible borrowers shall be made in the form of notice

attached as Exhibit 2, and the notice will be sent within sixty (60) days of the Effective Date.

Except as required by a presiding court or by applicable investor guidelines, Ocwen shall not

refer to foreclosure or proceed to a foreclosure sale on any property secured by a mortgage loan

subject to this provision for sixty (60) days following the mailing of the Solicitation, in order to

provide the borrowers the opportunity to apply and be reviewed for the loan modification

programs identified in Exhibit 3 (or any similar programs that subsequently become available,

and excluding any that are retired as of the date the borrower applies) consistent with the

solicitation and review requirements specified in Exhibit 2.  Participation in a COVID-19

forbearance will not, independently, render any Florida Borrower ineligible for the Loan

Modification Program described herein.

16.     Pursuant to the Loan Modification Program described in the immediately preceding paragraph, and during the twenty-four (24)-month period commencing on the Effective Date, Ocwen shall provide Debt Forgiveness to Florida Accounts totaling at least One Million Dollars ($1,000,000) through loan modifications on first lien and second lien residential mortgage loans as defined and calculated in Exhibit 1.  If the Florida Plaintiffs determine Ocwen failed to meet its Debt Forgiveness obligation described in this paragraph, the Florida Plaintiffs will notify Ocwen of the alleged failure, provide an opportunity to meet and confer within five (5) business days regarding the alleged failure, and provide Ocwen thirty (30) days following the meet and confer to cure the alleged failure ("Cure Period") or comply under the original terms of this Judgment.  If Ocwen has not cured its alleged failure to comply with this paragraph within the Cure Period, and the Parties cannot reach resolution as part of the meet and confer process, Ocwen shall promptly issue a payment as directed by the Florida Plaintiffs in the amount of One Million Dollars ($1,000,000).

17.     <u>Targeted Florida Borrower Outreach</u>:  Within six (6) months of the Effective Date, not including any time period during which there is a state of emergency in effect in Florida that materially impacts borrowers' ability to attend an event, Ocwen (a) shall partner with one or more non-profit organizations to participate in one loss mitigation outreach event in Florida (as permitted by applicable state social distancing guidelines), with such outreach event to also include information, and personnel qualified to answer questions about loss mitigation options potentially available to Florida Borrowers after the expiration of COVID-19 forbearance plans, and (b) shall partner with local housing counselors to implement a targeted loss mitigation mailing campaign designed to benefit at-risk Florida borrowers.  The Florida Plaintiffs agree that any event allowing virtual participation by Florida Borrowers may discharge Ocwen's

obligations pursuant to this Paragraph.  Ocwen shall provide the Florida Plaintiffs notice of its compliance with this term within thirty (30) days of the outreach event.

18.     <u>Effect of this Judgment on the CFPB Lawsuit</u>:  The Parties acknowledge the pending matter of *Consumer Financial Protection Bureau v. Ocwen Financial Corporation, Inc. et al.,* Case No. 9:17-CV-80495-KAM, filed in the United States District Court for the Southern District of Florida (the "CFPB Lawsuit"). The Parties agree that this Judgment does not bar, impede, or impair any Florida Borrower's qualification or entitlement to receive injunctive or other similar relief through the CFPB Lawsuit, on par in substance and value with the relief received by any other borrower, as the result of any resolution or judgment obtained in the CFPB Lawsuit.  In the event that Ocwen enters into any agreement with the Consumer Financial Protection Bureau ("CFPB") resolving claims asserted in the CFPB Lawsuit that provides for relief to Florida Accounts different from or more favorable than those contained herein, Ocwen agrees that Florida Borrowers shall not be precluded solely by virtue of this Judgment from qualification for entitlement to relief available through resolution of the CFPB Lawsuit.  In furtherance of this agreement, Ocwen agrees that the Florida Plaintiffs shall have the right to timely review and approve any material term offered by Ocwen as part of any resolution of the CFPB Lawsuit that, based upon this Judgment, would provide for an offset of any relief or otherwise reduce or diminish the recovery in the CFPB Lawsuit for Florida Borrowers.  The Florida Plaintiffs agree to review and respond to any such terms within one (1) business day of being notified, or within one (1) hour of being notified during any mediation session between Ocwen and the CFBP, and further agree that failure to respond within the timeframes set forth herein shall be deemed approval of any such terms.  If the Florida Plaintiffs disapprove of the term, Ocwen agrees that it will not agree to the inclusion of the term, or anything similar thereto,

in any resolution of the CFPB Lawsuit. Ocwen further agrees that it will not otherwise agree to inclusion of any material term that would provide for an offset of any relief or otherwise reduce or diminish the recovery in the CFPB Lawsuit for Florida Borrowers. The Florida Plaintiffs agree they shall not withhold any approval unreasonably and must articulate the grounds for any disapproval, including the expected specific impact on Florida Borrowers. Notwithstanding the foregoing, Florida Plaintiffs acknowledge that resolution of the CFPB Lawsuit may place the determination regarding the use of funds pursuant to the resolution, including but not limited to the eligibility for or amount of any consumer payment, solely within the discretion and judgment of the CFPB. Under such circumstances, the Florida plaintiffs agree that Ocwen shall not be liable for any such determinations by the CFPB nor deemed to be in breach of this Judgment based on such a determination by the CFPB.

19.     To the extent necessary to facilitate the distribution of monetary or other relief to Florida consumers described in this Judgment, and in response to reasonable requests made by the Florida Plaintiffs, Ocwen shall cooperate with the Florida Plaintiffs in providing the borrower name(s) and current or last known address of Florida Borrowers identified by the Florida Plaintiffs by loan number and/or property address.

### V.     ESCROW REVIEW FOR FLORIDA ACCOUNTS

20.     During the course of the matter, Ocwen disclosed that during the month of April 2017, thirty (30) states (including the District of Columbia) issued Cease and Desist Orders based on Ocwen's alleged failure to comply with a 2016 Memorandum of Understanding.  Ocwen has now settled with 27 of these states, and the remaining three states either withdrew, dismissed, or allowed their Cease and Desist Order to expire.

21.     Twenty-Six states (the "Participating States") required a review of Ocwen's practices, including a statistical review by a selected independent third-party auditor, Protiviti Inc., of escrowed loans in order to determine compliance with state and federal laws relating to escrow accounts, lender-placed insurance, and private mortgage insurance (the "Escrow Review").  In furtherance of this Judgment, Ocwen has agreed to the following:

22.     <u>Application of Escrow Review Remediation to Florida Accounts</u>:  To the extent that errors identified in the Escrow Review require corrective measures, refunds, or other remediation under the terms of the Escrow Review, such corrective measures, refunds, or other remediation will also be applied to any Florida Accounts which are impacted by the same error(s) and are or were serviced by Ocwen during the remediation period covered by the Escrow Review.

23.     <u>Reporting of Escrow Audit to the Florida Plaintiffs</u>:  Ocwen will provide the Florida Plaintiffs with Florida-specific reporting of servicing errors identified through the Escrow Review and the remediation taken on all Florida Accounts, including all restitution paid.  This reporting shall be similar to the reporting required by the Participating States included in the Escrow Review.

## VI.     CONSUMER COMPLAINT AND INFORMATION REQUEST HANDLING

24.     Beginning thirty (30) days after the Effective Date, Ocwen shall maintain a quarterly written report for two (2) years listing all complaints (including complaints received via email, phone, or written complaints) concerning Florida Accounts received from Florida Borrowers directly or from the Attorney General, OFR or the CFPB after the Judgment is entered.  This quarterly report shall be sortable by issue and by Ocwen's complaint resolution, which will include any remediation completed by Ocwen following the complaint review.  All Parties agree that, upon written request of either the Attorney General or OFR, and subject to the CFPB's

written consent to include complaints it sent to Ocwen, Ocwen shall provide a copy of any complaint identified on the quarterly report and a copy of a borrower's complete loan file for review, including the payment history, correspondence between Ocwen and the borrower, a transaction log, and Ocwen's response to the complaint.

25.     In addition to the written report, the Florida Plaintiffs require that Ocwen implement an enhanced complaint review and resolution process (the "Borrower Complaint Resolution Plan") to ensure that borrower complaints are expedited and resolved timely and accurately.  Ocwen shall submit a Borrower Complaint Resolution Plan to Florida within ten (10) business days after the Effective Date for review and determination of adequacy for the intended purpose.  The purpose of the Borrower Complaint Resolution Plan is to ensure that Ocwen thoroughly documents, evaluates, and investigates borrower complaints and remediates any harm associated with the complaint. The Borrower Complaint Resolution Plan shall be implemented within thirty (30) days of the Florida Plaintiffs' approval of such Plan, shall remain in effect for two (2) years after implementation, and shall include the following:

   a.     Ocwen shall activate a dedicated, toll free hotline staffed by customer service representatives in Florida for Florida Borrowers to raise questions or concerns regarding their accounts; such hotline will be maintained with staff sufficient to handle calls within the hours of 9 am EST and 5 pm EST;

   b.     Upon Ocwen's receipt of an unresolved complaint concerning a Florida Account regarding specific activity on the account, where the borrower states the borrower has previously complained of the same or similar behavior by Ocwen, Ocwen shall, regardless of the method in which Ocwen received the complaint (via email, phone, or a written complaint), escalate the Florida Borrower's complaint to an escalation relationship manager who has authority to address and resolve the complaint and approve remediation payments;

   c.     For all written complaints received from Florida Borrowers, Ocwen shall respond in writing, by acknowledging the complaint and informing the borrower of Ocwen's review process applicable to all borrower complaints, within an expedited timeframe of no more than 5 business days;

d.   Ocwen shall provide additional training to its frontline staff to process complaint intake, to escalate all first-time complaints to the corresponding departments within Ocwen for analysis and remediation, and to provide Florida Borrowers with a thorough written response to resolve each borrower's complaint; and

e.   Ocwen shall designate a point of contact for complaints escalated by the Attorney General and shall conduct monthly calls as directed by the Attorney General to discuss complaint statuses.

f.   Ocwen shall designate a point of contact for complaints escalated by OFR.

## VII.   RELEASE

26.   By entry of this Judgment, the Florida Plaintiffs release and forever discharge Ocwen and any of its divisions, subsidiaries, affiliates or parent entities, and any of their officers, directors, agents, servants, or employees from all civil liability, administrative claims, causes of action, damages, restitution, fines, costs, attorney's fees, remedies and/or penalties that the Florida Plaintiffs asserted or could have asserted, whether known or unknown, related to the Covered Conduct as of the Effective Date.

## VIII.   DOCUMENTATION AND REPORTING

27.   Ocwen shall create and maintain, for a period of two (2) years, records sufficient to demonstrate Ocwen's compliance with obligations under the Judgment. Upon receipt of written notice from the Florida Plaintiffs asking that Ocwen provide a compliance report regarding Ocwen's obligations under this Judgment, Ocwen shall, within a reasonable period of time not to exceed sixty (60) days, provide a report to the Florida Plaintiffs. The Florida Plaintiffs may not request the report pursuant to this paragraph more than twice, unless the report shows that Ocwen is not in compliance. Should the report demonstrate that Ocwen is not in compliance with the obligations under the Judgment, Ocwen shall submit a remediation plan to the Florida Plaintiffs demonstrating Ocwen's plan to comply with the Judgment. The Florida Plaintiffs will provide its objection or non-objection to any remediation plan within thirty (30) days of receipt of the

remediation plan. The right of the Florida Plaintiffs to object or not object to a remediation plan is in addition to any other lawful means of enforcement under this Judgment, and any nonobjection under this paragraph shall not waive the right of the Florida Plaintiffs to obtain relief for violations of this Judgment in court.

## IX.    GENERAL PROVISIONS

28.    Ocwen admits to the jurisdiction of the Court and consents to the entry of this Judgment and to the rights of the Florida Plaintiffs to enforce the terms and conditions of this Judgment. Notwithstanding the foregoing, the Florida Plaintiffs will provide Ocwen with an opportunity to meet and confer to discuss and attempt to resolve any allegations that Ocwen has violated this Judgment seven (7) calendar days before taking any action to enforce the Judgment.  However, this Consent Judgment shall in no way preclude the Attorney General from bringing an action without notice under exigent circumstances that require immediate action to protect the health, safety, and welfare of the public.

29.    If any portion of the Judgment is held to be invalid, unenforceable, or void for any reason whatsoever, then such portion will be severed from the remainder and will not affect the validity and enforceability of the remaining portions of the Judgment.

30.    Nothing herein shall prevent the parties from petitioning the Court for a modification of this Judgment in the event that amendments or changes in federal or state law, future changes in accreditation or other standards, or unforeseen events create a conflict with the mandated provisions of this Judgment.

31.    Any failure of the Florida Plaintiffs or Ocwen to exercise their rights under this Judgment shall not constitute a waiver of its rights.

32.     No part of this Judgment shall be construed as a waiver or release of any private rights, causes of action or remedies of any person against Ocwen.  Nothing herein shall be construed to limit or bar any other governmental entity from pursuing other available remedies against Ocwen for violation of laws.

33.     Nothing in this Judgment shall be construed to waive or limit any claim of sovereign immunity the State of Florida may have in any action or proceeding.

34.     Any failure by any Party to this Judgment to insist upon the strict performance by any other Party of any of the provisions of this Judgment shall not be deemed a waiver of any of the provisions of this Judgment, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of the Judgment.

35.     Ocwen shall notify its officers and directors and use reasonable efforts to notify its employees, agents, and contractors responsible for carrying out and effecting the terms of this Judgment of the obligations, duties, and responsibilities imposed on Ocwen by this Judgment.

36.     Ocwen agrees that it shall not effect any change in the form of doing business or the organizational identity of Ocwen for the purposes of avoiding the terms and conditions set forth in this Judgment.  In the event that Ocwen is sold, assigned, consolidated with, merged with, or transferred to a third-party within three (3) years from the Effective Date, a copy of this Judgment shall be provided by Ocwen to said purchaser, assignee, or transferee.

37.     This Judgment is continuing in nature and shall be binding on any and all successors or assigns of Defendant.

38.     This Judgment is intended to be for the benefit of the Parties and does not create any other third-party rights.

39.     The Florida Plaintiffs and Ocwen waive all rights to seek appellate review, rehearing, or otherwise to challenge or contest the validity of this Judgment.  Ocwen further waives and releases any and all claims it may have against the Florida Plaintiffs, its employees, representatives or agents with respect to this action.

40.     This Judgment is governed by the laws of the State of Florida.

41.     The Parties jointly participated in the negotiation of the terms articulated in this Judgment, and all Parties consulted counsel or had the ability to do so. No provision of this Judgment shall be construed for or against another Party on the grounds that one Party or another was more heavily involved in the preparation of the Judgment or had control over the provisions included herein.

42.     This Judgment is the final, complete, and exclusive statement of the Parties' agreement on the matters contained in this Judgment, and it supersedes all previous negotiations and agreements. Other than any representation expressly stated in this Judgment, the Parties have not made any representations or warranties to each other, and neither Party's decision to enter into this Judgment is based upon any statements by the other Party outside of those in this Judgment.

43.     This Judgment may not be amended except by written consent of the Parties.

44.     The undersigned counsel represents and warrants that they are fully authorized to execute this Judgment on behalf of the State of Florida.

45.     The undersigned counsel represents and warrants that they are fully authorized to execute this Judgment on behalf of Ocwen.

46.     This Judgment may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Judgment.

47.     All Parties acknowledge that this Judgment is not confidential or protected from public disclosure.

48.     Nothing in this Judgment shall be construed as relieving Ocwen of its obligations to comply with all state and federal laws, regulations, or rules, or granting Ocwen permission to engage in any acts or practices prohibited by such laws, regulations, or rules.

49.     Nothing herein shall be interpreted to prevent the Florida Plaintiffs from taking enforcement action to address conduct of Defendant occurring after the Effective Date, or conduct occurring before the Effective Date not released herein, that the Florida Plaintiffs believe to be in violation of the law.  The fact that such conduct was not expressly prohibited by the terms of this Judgment shall not be a defense to any such enforcement action.

50.     Any notices required to be sent to the Florida Plaintiffs or to Ocwen under this Judgment shall be sent by certified mail, return-receipt requested, or other tracked mail delivery service. The documents shall be sent to the following addresses:

For the Attorney General:

      Sasha Funk Granai
      Assistant Chief-Assistant Attorney General
      Office of the Attorney General
      Department of Legal Affairs
      3507 East Frontage Road, Suite 325
      Tampa, Florida 33607
      (813) 287-7950 (telephone)
      Sasha.Granai@myfloridalegal.com

For OFR:

      Gregory C. Oaks, Director
      Division of Consumer Finance
      Florida Office of Financial Regulation
      200 East Gaines Street
      Fletcher Building – 550G
      Tallahassee, FL 32399-0376
      Office: (850) 487-9687
      Direct: (850) 410-9829
      Greg.Oaks@flofr.com]

For Ocwen:

>Sabrina M. Rose-Smith
>GOODWIN PROCTER LLP
>1900 N Street, NW
>Washington, DC  20036
>(202) 346-4000 (telephone)
>srosesmith@goodwinlaw.com

51.    This court retains jurisdiction of the Judgment and the Parties for purpose of enforcing and

modifying the Judgment and for the purpose of granting such additional relief as may be necessary

and appropriate.

52.    The Clerk shall close this case.


IT IS SO ORDERED, ADJUDGED AND DECREED this day of October 23, 2020.


KENNETH A. MARRA
United States District Judge

**JOINTLY APPROVED AND**
**SUBMITTED FOR ENTRY:**

**FOR PLAINTIFFS OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA,**
**DEPARTMENT OF LEGAL AFFAIRS AND OFFICE OF FINANCIAL REGULATION,**
**STATE OF FLORIDA, DIVISION OF CONSUMER FINANCE**

_____

Sasha Funk Granai
Assistant Chief-Assistant Attorney General
Florida Bar No. 96648
Email: Sasha.FunkGranai@myfloridalegal.com
Office of the Attorney General
Department of Legal Affairs
3507 East Frontage Road, Suite 325
Tampa, Florida 33607
(813) 287-7950 (telephone) (813) 281-5515 (facsimile)

_____

Victoria Butler
Director, Consumer Protection Division
Fla. Bar No.: 861250
Email: Victoria.Butler@myfloridalegal.com
Office of the Attorney General
Department of Legal Affairs
3507 East Frontage Road, Suite 325
Tampa, Florida 33607

_____

Patricia A. Conners
Chief Associate Deputy Attorney General
Fla. Bar No.: 361275
PL-01, The Capitol
Tallahassee, FL 32399
(850) 414-3300 (telephone) (850) 488-9134 (facsimile)

_____
Gregory C. Oaks, Director
Division of Consumer Finance
Florida Office of Financial Regulation
200 East Gaines Street
Fletcher Building – 550G
Tallahassee, FL 32399-0376
Office: (850) 487-9687
Direct: (850) 410-9829
Greg.Oaks@flofr.com

**FOR OCWEN FINANCIAL CORPORATION, OCWEN MORTGAGE SERVICING, INC., OCWEN LOAN SERVICING, LLC, AND PHH MORTGAGE CORPORATION**

_____
Sabrina Rose-Smith
GOODWIN PROCTER, LLP
1900 N Street, NW
Washington, DC 20036
Tel.:  202-346-4185
srosesmith@goodwinlaw.com

**APPROVED AS TO FORM FOR ENTRY:**

**FOR PLAINTIFFS OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA, DEPARTMENT OF LEGAL AFFAIRS AND OFFICE OF FINANCIAL REGULATION, STATE OF FLORIDA, DIVISION OF CONSUMER FINANCE**

_____
Sasha Funk Granai
Assistant Chief-Assistant Attorney General
Florida Bar No. 96648
Email: Sasha.FunkGranai@myfloridalegal.com
Office of the Attorney General
Department of Legal Affairs
3507 East Frontage Road, Suite 325
Tampa, Florida 33607
(813) 287-7950 (telephone)

_____

Victoria Butler
Director, Consumer Protection Division
Fla. Bar No.: 861250
Email: Victoria.Butler@myfloridalegal.com
Office of the Attorney General
Department of Legal Affairs
3507 East Frontage Road, Suite 325
Tampa, Florida 33607

_____

Patricia A. Conners
Chief Associate Deputy Attorney General
Fla. Bar No.: 361275
PL-01, The Capitol
Tallahassee, FL 32399

_____

Gregory C. Oaks, Director
Division of Consumer Finance
Florida Office of Financial Regulation
200 East Gaines Street
Fletcher Building – 550G
Tallahassee, FL 32399-0376
Office: (850) 487-9687
Direct: (850) 410-9829
Greg.Oaks@flofr.com

**FOR OCWEN FINANCIAL CORPORATION, OCWEN MORTGAGE SERVICING, INC., OCWEN LOAN SERVICING, LLC, AND PHH MORTGAGE CORPORATION**

_____

Sabrina Rose-Smith
GOODWIN PROCTER, LLP
1900 N Street, NW
Washington, DC 20036
Tel.:  202-346-4185
srosesmith@goodwinlaw.com

21

## **EXHIBIT 1**

A.    **Loan Modification Criteria**

1.    For first lien loan modifications, Ocwen shall receive credit towards its obligation in paragraph 15 and 16 for every dollar of Debt Forgiveness if:

    a.    At the time the modification is offered, the borrower is at least 30 days delinquent or otherwise qualifies as being at imminent risk of default due to his or her financial situation;

    b.    The borrower's pre-modification LTV (post-capitalization of any delinquent charges) is greater than or equal to 80%;

    c.    The borrower's post-modification LTV is no greater than 120%.

2.    For second lien loan modifications, Ocwen shall receive credit towards its obligation in paragraph 15 and 16 for every dollar of Debt Forgiveness if at the time the modification is offered, the borrower is at least 30 days delinquent or otherwise qualifies as being at imminent risk of default due to his or her financial situation;

B.    **Calculation of Debt Forgiveness Amounts**

1.    Ocwen shall receive dollar-for-dollar credit for Debt Forgiveness through loan modifications that meet the criteria described above. "Debt Forgiveness" shall be defined as "Unpaid Principal Balance ("UPB") Forgiven" plus "Eligible Capitalized Amounts Forgiven."

    a.    "Unpaid Principal Balance Forgiven" shall be calculated as the greater of either (i) zero dollars ($0), or (ii) pre-modification UPB minus post-modification UPB.

    b.    "Eligible Capitalized Amounts Forgiven" shall be calculated as the lesser of either (i) delinquent interest, plus escrow advances, plus corporate advances, but excluding late fees and convenience fees or (ii) Total Amount Forgiven.

    c.    "Total Amount Forgiven" shall be calculated as pre-modification total debt minus post-modification UPB.

2.    Ocwen shall receive credit for all loan modifications described herein which are Contractually Current at the time the modification is completed in Ocwen's servicing system, which is denoted by the "modification completed" system indicator. "Contractually Current" means less than 30 days delinquent and contemplates that a borrower has successfully completed a trial modification program and the modification has become permanent, demonstrating the borrower's ability to pay. For additional costs that may be incurred post modification effective date, and all escrow advances assessed after the modification date, those costs will still be owed by the borrower and, Ocwen shall not be prevented from receiving credit for the modification.

3.    Ocwen's efforts to satisfy its obligation in Paragraphs 15 and 16 of the Judgment is subject to, and shall be interpreted in accordance with, as applicable, the terms

and provisions of the Servicer Participation Agreement with the U.S. Department of the Treasury, any servicing agreement, subservicing agreement under which Ocwen services for others, special servicing agreement, mortgage or bond insurance policy or related agreement or requirements to which Ocwen is a party and by which it or its servicing affiliates are bound pertaining to the servicing or ownership of the mortgage loans, including without limitation the requirements, binding directions, or investor guidelines of the applicable investor (such as Fannie Mac or Freddie Mac), mortgage or bond insurer, or credit enhancer, provided, however, that the inability of Ocwen to offer a type, form or feature of borrower assistance by virtue of the Applicable Requirements shall not relieve Ocwen of its obligations imposed by Paragraphs 15 and 16 of the Judgment, i.e., Ocwen must satisfy such obligations through the offer of other types, forms or features of borrower assistance that are not limited by such Applicable Requirements.

**C.      Borrower Eligibility and Other Questions**

1.      Ocwen shall be responsible for answering borrowers' questions regarding the Targeted Loan Modification Program described in Paragraphs 15 and 16 and this Exhibit 1 of the Consent Judgment.

2.      Ocwen shall provide training and scripts to its frontline staff to answer borrowers' questions regarding eligibility, loan modification criteria, Debt Forgiveness, and any other information pertaining to the Targeted Loan Modification Program described in Paragraphs 15 and 16 and this Exhibit 1 of the Consent Judgment.

3.      Any consumer complaints that arise from or relate to the Targeted Loan Modification Program shall be included in the quarterly written report described in Section VI of the Consent Judgment and shall be otherwise subject to the terms of Section VI.

**EXHIBIT 2**



**EXHIBIT 3**

Below is a list of loan modification programs currently offered by Ocwen:

Federal Home Loan Mortgage Corporation ("FHLMC" or "Freddie Mac")

- Flex Modification

Federal National Mortgage Association ("FNMA" or "Fannie Mae")

- Flex Modification

Federal Housing Administration ("FHA")

- Disaster Modification (Disaster Relief Modification)
- Disaster Stand-alone Partial Claim (Disaster Relief Modification)
- Partial Claim Modification
- FHA Home Affordable Modification Program
- COVID-19 Owner-Occupant Loan Modification
- COVID-19 Combination Partial Claim and Loan Modification
- COVID-19 FHA-HAMP Combination Loan Modification and Partial Claim with Reduced Documentation
- COVID-19 Non-Occupant Loan Modification

Private Label Securities ("PLS")

- Helping Homeowners' Modification
- Streamline Modification

United States Department of Agriculture ("USDA")

- Term Extension (Disaster Relief Modification)
- Capitalization of Delinquency and Term Extension (Disaster Relief Modification)
- Loan Modification

Veterans' Affairs ("VA")

- VA Disaster Loan Modification (Disaster Relief Modification)
- Standard Modification
- VA Affordable Modification